the judges pronounced their opinions.
Judge Coalter.
The first question arising in this case is, whether, admitting William Hall, the son and heir at law of William, the testator, to have the reversion in fee, after the death of Joseph without issue, the deed of bargain and sale, of the 17th of October, 1797, made by him to the lessor of the plaintiff, passed the estate ?
When this case was formerly before the Court, on the first ejectment,(a) it was determined that the defendant held by intrusion, and that, as it did not appear that any entry had been made on the land by the grantor before executing the deed, it passed nothing; and on that ground the judgment was reversed.
*539 tioned, formally and peaceably, and then and there, in the presence of two good and lawful witnesses, took possession of the said land, and all things therelo belonging and appertaining; claiming the said land as heir at law, and eldest son, of William Hall, the elder, deceased; that, after making the said entry, he made the deed in question, to wit, on the day of its date; and which deed is found in hac verba. It describes the grantor as an in» habitant of Newberry county, in South Carolina, and is acknowledged by him on the same day, beforethe Court ©f that county. On this second ejectment, which is brought on this 5ame deed, the question again occurs, but with this difference: it is found in the special verdict, that William Hall, the grantor, on the 12th day of September, 1797, entered into and upon the land in the declaration men-~
The jury also find, that Mary Hall, widow and devisee of Joseph Ha l, was in actual possession of said land at the tic e the entry above found was made, and that said possession of said Mary was, at the time of said entry, adverse to that of the said Wil iam Hall¡ and that the said Mary was so actual y in possession at the time the said entry was made, and, notwithstanding the said entry, remained so in possession, and continued in such actual and adverse possession thereof, until the month of October, 1799.
This special verdict presents this question, whether, supposing William, the grantor, to be the reversioner after the death of tenant for life, will his entry upon the intruder enable him, a month or two after such entry, to convey by bargain and sale; the intruder being actually in adverse possession, and on the land, at the time of such entry, and continuing such adverse possession at the time, and until after the execution of such deed ?
The cases of M'Lean v. Copper,(a) Duval v. Bibb,(b) Tabb v. Baird,(c) and Hall v. Hall,(d) which cases are to be found in 3 Gall~ and all of which were decided oti the ground that there `must he possession in the grantor *540 at the time of the deed made, or livery of seisin, actually found, in order to pass the estate, have created considerable difficulty in my mind on this subject.
Here a grantor, residing in South Carolina, makes a conveyance of land of which another, at the time, is in actual adverse possession, and, therefore, to a mind not conversant, either in the practice or the theory of the ancient feudal investiture, this case would seem to be similar to those above referred to. To prove, therefore, that this grantor was in possession, nothwithstanding another was living on the land, we must resort to technical reasoning, arising from the nature of feudal tenures and investitures, in opposition to that evidence of the senses, arising from the facts found in the special verdict.
An intrusion(a) is the entry of a stranger, after a particular estate of freehold is determined, before him, in remainder or reversion. The reversioner, or remainder-man, by this act, is ousted, (if I may use the expression,) and the intruder becomes tenant to the lord. The reversioner or remainder-man, however, may purge this intrusion by summary proceeding, without suit, to wit, by a formal and peaceable entry, (b) such as is found in this verdict 5 which notorious act of ownership is equivalent to a feudal investiture by the lord, and gives him that hath right of entry a seisin; making him complete owner, an.d capable of conveying from himself either by descent or purchase. This is called his right of entry; and if he lies by until the death of the intruder, when the land descends to. his heir, then his right of entry is tolled or taken away, and he has only a right of action. The maxim of the common law, then, which is, “ that a right of entry or chose in action cannot be granted or transferred to a stranger,”(c) or, as Blackstone has it, that “ a party in possession may convey, but, if he has only the right of possession, or of property, he cannot,” must be considered as applying to these rights, before they are exercised so as to gain possession, by entry in the first case, or suit in the second.
*541 The grantor, here, before his entry, had only a right of entry, or right of possession: this right he could not convey: by his entry, which is equal to a feudal investiture, he became tenant of the freehold- — in England, tenant to the lord. He holds, then, not a bare right of entry, or of possession : he, by this open and notorious act, has done away this wrongful intrusion, and is seised and may convey: the party on the land no longer holds by intrusion, and would be no longer considered tenant to the lord : another is now seised of the fee, and would be considered such tenant. Had he made a conveyance, when thus on the ground, I apprehend it would have been good ; for it is not necessary, in order to purge the intrusion, to turn the intruder out. This might require violence ; and, indeed, if the remainder-man cannot enter through fear, he may make claim near the land, and this has the same effect with the entry. A person then may be in possession of the fee, when another is on the land; and this fee he may convey. He may be deprived of his fréehold again, though by disseisin ; what that is, perhaps, at this day, is a nice question, and the doctrine will not now be much considered : it will suffice, at present, to say, that every possession of another’s land, even by a person claiming adverse, I apprehend, is not a disseisin, which, when effectual, ousts the party of his freehold, and makes the disseisor tenant thereof, and answerable to the lord. When the freehold becomes thus wrongfully in possession of another, then the party is put again to his right of entry, and cannot convey, and may even lose this right of entry by a descent cast. But this continued possession, in Mary Hall, is neither found to be a disseisin, by the verdict, nor are such facts found, as, according to my present impressions, would enable the Court to adjudge it a disseisin. It is true the jury do not find that the party being seised conveyed, but having found an entry, which gave him seisin,(a) and not finding a disseisin, the maxim, “ that what appears not is to be taken as not having existed,” must apply; and we must consider the grantor, if he had a right of entry, as *542 having reduced his right to possession; and that at the time the deed wás made, he was seised of the freehold, ancj Could convey, J
This brings us to the second question, to wit, whether had such right of entry ?
This will depend on the construction of the will of William Hall, the elder, made in the year 1764, and in which is this clause relative to this land :—
“ Item, I give or let to my sons, Thomas Hall and Jo* seph Hall, my new dwelling plantation, and the mill thereon, during their natural life, and no longer, and then I will and bequeath the same to each of their eldest sons, and their heirs forever; and, if no male issue, to each ,of their eldest daughters} and their heirs forever.”
Partition between Thomas and Joseph was made. Thomas aliened his moiety, has had a son, and both he and his son are found to be alive. Joseph never had issue, male or female, but has' departed this life, having devised his moiety to his wife.
The testator had several other sons, as also other tracts of land, which, when an entire tract was devised to two, and the proper division between them was known, was devised to them' severally, by metes and bounds, 8tc. This circumstante; the improbability that the testator intended the survivor to táke in exclusion of the eldest son of the deceased, if he had left one, and the use of the words “ to each of their eldest sons,” induced me to suppose it probable, that a tenancy in common was intended as to them; in the same manner as if the will had been “to my sons, Thomas and Joseph, and each of them, &c. and to each of 'their eldest sons, &c.” This point, however, is perhaps immaterial, as partition has been made, and in which case, if it was a joint tenancy for life, and nó more, each would, on partition, take an estate for his own life in his moiety, which, on his death, would go to him in remainder or reversion.
The great doubt in my mind is, whether an estate tail was not created in Joseph and Thomas, which, by the *543 act of Assembly, was turned into a fee ? If land be given to two brothers, A. and B., and the heirs of their bodies ; as they cannot have the same heirs of their bodies, they take a joint estate for life, and several inheritances.(a) The question is, whether these brothers did not take such estates in this case ? or, in other words, whether they did not take as tenants in common, or joint tenants, for life, with several remainders in tail-male, remainder to each of their eldest daughters in fee ?
I incline to think they did take such estates as last described, although I advance the opinion with very great diffidence and distrust, not only because of the contrary opinion expressed by one of the Court before, when this cause was formerly heard, but because, on a further and patient examination, that judge adheres to his former opinion, in which he is also joined by the presiding judge. Considering, however, that the case is open for decision, it becomes my duty to give my opinion.
This case arising on the construction of a will, the great object is to find out the intention of the testator. To do this, the Court must not only put themselves in his place, but suppose the things to have happened, which he expected to happen. It is found, by the verdict, that neither Thomas nor Joseph were married, or had children, at the time of making the will, or death of the. testator; but it is evident he expected them to marry, and' to have both sons and daughters, and under this expectation makes a provision for them and their issue. The intention of the testator must govern'; and, where he has two intentions, a general and a particular intention, the latter must yield to the former, if they are in conflict with each other, and both cannot stand.
If the object of the testator was, that the male issue oí Joseph, which he should leave at his death, whether that should be his eldest son, or the son of his eldest son, or the second or other son in succession, in case of the death of the elder without male issue, should take, before the eldest daughter; and if this could not be effected *544 without enlarging the estate of Joseph to a fee tail-inale, . , , i then it must be so enlarged.
u The word 4 issue’ is used in the slat, de donis promis- > _ 1 cuously with the word heirs ; and, which is a strong reason for the technical sense which it has obtained, it comprehends the whole generation, as well as the word heirs; and is therefore more properly, in its natural signification, a word of limitation than of purchase.
This doctrine is laid down by one of the judges, in the case of Smith and wife v. Chapman, 1 H. & M. 291., as extracted from the opinion of Justice Gould, in 2 Wilson, 324. The word children, on the other hand, is generally considered a term of purchase.
At the time of making this will, and at the death of the testator, the law of primogeniture prevailed. I will then suppose that. Joseph had had issue, first a daughter and then a son, and that this son had instantly died, and that he had afterwards had another son, and then died, leaving this daughter, his first-born child, and this second' son; would the fee, in this case, have vested in the eldest son, and, on his death, in his sister, who was then his heir at law ? If this was an estate for life in the father, remainder to the eldest son unborn in fee, the remainder would vest in him when born, and, on 'his death, would pass to his heir at law, to wit, his sister; and, consequently, the eldest daughter of Joseph would take this estate, although he did not die without male issue, but left a son.
But it will be said that this estate was not to vest on the birth of a son, but on the death of Joseph, and in his eldest son then alive, (who is the person' described in the will,) and if no such person, in his eldest daughter. I will then suppose that Joseph had had a son and daughter; that his son died in his lifeiime, leaving a son, and that his daughter survived him; this estate would not go to the grandson, but to the daughter, as it must go to the eldest son of Joseph then alive, and, if none alive, to his daughter, although it was evidently the intention of *545 the testator to prefer the male children, at least, of the eldest son. to this daughter, and whh h cannot be effected, except by its going to him as the issue male of Joseph ; he not being capable to take under the descriptio persones of the male child of Joseph then alive. So such son of the eldest son would succeed (as it was intended he should) in preference to a second son of Joseph, who might be alive at the death of his father. '
■ I had doubts once, whether this might not be considered a devise in strict settlement, to wit, to the father for life, and to the first and every other son, in succession, in tail-male, remainder to the eldest daughter in fee. But, to effect this, we must supply the words, “ and if no male issue, to the eldest son,’' and must also supply the words, “ and every other son successively j” and apply these words also to. them , whereas the, plain reading of the will is, that on the death of Thomas and Joseph, without male issue, &c.; and as giving them estates in fee tail-male would have nearly the same effect as the settlement above supposed, I cannot do such violence to the words, at the same time that I think the great object of the will would be defeated without giving the one construction, or the other. The words, “ and if no male issue,” are important, and cannot be rejected, which would be the case were we to give the eldest soit a fee at his birth. If we say they mean, eldest son alive at the death of Joseph, then a second son will take in exclusion of the heir male of the eldest son, and this will exclude the words, “ and their heirs for ever,” which, if they cannot, consistent with the other words, create a fee in the eldest son, on his birth, had certainly some object. If we consider the word “ heirs” synonymous with issue, and this again restrained by the terms issue male of Joseph, which his grandson would be, then every word has a meaning compatible with, and tending to promote, the great object of the testator, which seems to me to be, to perpetuate the estate in the male line of his family, and, in default thereof, to give it to hi;; eldest *546 grand-daughter, in exclusion of any great grand-daughter.
Judge Roane,
In considering the devise before us to have created a joint tenancy for life, in the land in controversy, in favour of Thomas and Joseph Hall, with a remainder, in severalty, to the eldest son of each, and their heirs, and not as conferring an estate tail upon the said Joseph and Thomas Hall, I must refer,in general, to my opinion, delivered in the case of Smith and wife v. Chapman,(a) in which this subject was fully considered.
According to the principles of that decision, the terms, “ eldest son and his heirs,” would be taken as a word of purchase, and not of limitation, and, consequently, the estate previously granted would be considered only as a life estate. I understand that this construction would be readily acceded to by the judge who has just given his opinion, but for the words, “ if no male issuef used after the devise to the eldest son and his heirs for ever; which he supposes converts the estate of Joseph into an estate tail. In considering those words as not having that effect, but as being only a varied form of expression, conveying the meaning that, if the devisee for life should not have a son, or an eldest son, then the estate should go to the daughter, I am supported, among many other considerations, by the construction put upon those words by the testator himself, in at least two several clauses of his will, in a manner not to be mistaken or resisted. The testator has come into this construction, 1st. In his devise of lands to his son, William Hall, for life, and no longer, and then to the eldest son of William Hall, and his heirs : after which, the testator adds, that in case there be no son of William Hall to heir the same, (not male issue, a phrase used in the other devises,) then the estate should go to the eldest daughter; and, 2dly. In the clause devising a tract of land to James Hall, for life, and no longer, and then to the “ eldest son” of said James, omitting to, add, ‘‘ and his heirsafter which is inter *547 posed the usual words, “and if no male issue,” &c.; and then the testator immediately adds, “ but if a son, to him and his heirs for ever. In the first devise, the testator uses the phrase, “ and if no son of William Hall,” indifferently for the phrase now in question ; and in the devise last mentioned, notwithstanding the existence of the words supposed to convert the estate of Joseph into an estate tail, the testator emphatically reprobates that construction, by using words immediately afterwards, expressly giving a fee to the eldest son. It is evident to me, therefore, that the testator has himself expounded the terms, “ if no male issue,” in a sense synonymous with the terms, “ if no son;'y a sense consistent with the remainder in fee to the eldest son, and incompatible with the idea of an estate tail existing in the first devisee ; and I am for letting this construction run through the whole will; a will in which it cannot be doubted but that the same intention existed towards all his sons, in relation to the present question.
With respect to the question of adverse possession, I was, at first, inclined to consider the verdict uncertain, if not contradictory : but inasmuch as, although it is found that Mary Hall was in actual and adverse possession at the time of the entry of William Hall, the grantor, and so remained in such actual and adverse possession until the month of October, 1799, it is also found that the said William Hall, the grantor, entered formally and peaceably into the premises, and “ took possession thereof,” and all things thereunto belonging or appertaining, and that the grantee, the lessor of the plaintiff, entered upon the land, and was seised thereof, the verdict must be reconciled, by intending the jury to have considered that as an actual and adverse possession in Mary Hall, which was, nevertheless, a vacant possession at the time of, the entry of William Hall, the grantor, and the acquisition of seisin by William Hall, the grantee; an idea countenanced, as not being inconsistent and incompatible, by the decision of *548 this Court in the case of M'Lean v. Copper ;(a) and if such be the meaning of the jury as to an adverse posses» sjon as at the time of the entry, it may be taken to be 7 " J . . 1 . the same as to all the future time, and to justify the ajjl; tQ iessor Qf t^e plaintiff; especially as no posterior ouster is found, on behalf of the appellees, as to . 11 the premises m question.
On these grounds, and because the joint estate of Thomas and Joseph Hall was severed in their lifetime, either by the division and the, alienation by Thomas, found by the verdict, or by the act of 1786, I am of opinion to reverse the decision of the Court below, and enter judgment for the appellant.
Judge Fleming was of the same opinion.
Judgment reversed, and entered for the appellant.

 3 Call, 488.

 3 Call, 367.

 Ibid. 362.

 Ibid. 475.

 Ibid. 488.

 3 Bl. 168.

 Ibid. 174, 175.

 Co. Litt. 214, 266.

 1 Wash. 37.

 Bac. Abr. Title Estates Tail C.

 1 H. & M. 294.

 3 Call, 367.